CAMPBELL, APPELLANT, *v.* OHIO STATE UNIVERSITY MEDICAL CENTER, APPELLEE.

[Cite as *Campbell v. Ohio State Univ. Med. Ctr.,* 108 Ohio St.3d 376, 2006-Ohio-1192.]

(No. 2004–2173—Submitted October 25, 2005—Decided March 29, 2006.)

MOYER, C.J.

{¶ 1} We are required in this appeal to decide whether a patient of a mental-health institution who is injured by another patient and brings a cause of action against the institution for negligence for breaching its duty under R.C. 5122.29(B)(2) to protect her from assault and battery must meet the requirements of R.C. 2305.51.

{¶ 2} Harding Hospital is a mental-health institution operated by the Ohio State University Medical Center, defendant-appellee. In November 1999, Patient A, a patient of the hospital, physically attacked and injured another patient. The next day, Patient A physically attacked and severely injured Marlene Campbell, plaintiff-appellant, who also was a patient of the hospital.

{¶ 3} Campbell filed a complaint in the Court of Claims, alleging that the medical center violated R.C. 5122.29(B)(2), which provides:

{¶ 4} "All patients hospitalized or committed pursuant to this chapter have the following rights:

{¶ 5} " * * *

{¶ 6} "(B) The right at all times to be treated with consideration and respect for his privacy and dignity, including without limitation the following:

{¶ 7} " * * *

{¶ 8} "(2) A person who is committed, voluntarily or involuntarily, shall be given reasonable protection from assault or battery by any other person."

{¶ 9} The Court of Claims granted summary judgment in favor of the medical center, finding that pursuant to R.C. 2305.51(B), Campbell was required to prove that Patient A had made an explicit threat of inflicting harm to her. The Tenth District Court of Appeals affirmed.

{¶ 10} The matter is before this court upon the acceptance of a discretionary appeal.

{¶ 11} R.C. 5122.29(B)(2) provides that a patient in a mental-health institution has a right to reasonable protection from the violent conduct of others. We must resolve the tension between the duty of an institution to protect its patients, created by R.C. 5122.29(B)(2), and the requirement that the elements set forth in R.C. 2305.51(B) must be satisfied before an institution is liable for harm caused by a patient. R.C. 2305.51(B) provides:

{¶ 12} "A mental health professional or mental health organization may be held liable in damages in a civil action * * * for serious physical harm or death resulting from failing to predict, warn of, or take precautions to provide protection from the violent behavior of a mental health client or patient, only if the client or patient or a knowledgeable person has communicated to the professional or organization an explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims * * *."

{¶ 13} Campbell argues that R.C. 2305.51 conflicts with the duty to protect patients under R.C. 5122.29(B)(2). R.C. 5122.34(B), however, expressly states that a mental-health institution will not be liable for harm that results from failing to protect a patient from another patient unless the injured patient establishes liability under R.C. 2305.51:

{¶ 14} "Regardless of whether any affirmative action has been taken under this chapter with respect to a mental health client or patient and except as otherwise provided in section 2305.51 of the Revised Code, no person shall be liable for any harm that results to any other person as a result of * * * failing to otherwise attempt to protect such other person from harm by such client or patient."

{¶ 15} Accordingly, when a patient of a mental-health institution is assaulted or battered by another patient, the institution may be held liable for harm that results only if the injured patient establishes liability under R.C. 2305.51.

{¶ 16} No evidence indicates that an explicit threat of an attack was communicated to the hospital. In fact, Campbell acknowledged that Patient A did not warn of an attack. Thus, summary judgment was properly granted for the medical center on Campbell's R.C. 5122.29(B)(2) claim.

{¶ 17} Campbell argues that this conclusion does not take into account R.C. 2305.51(E), which provides that R.C. 2305.51 "does not affect the civil rights of a mental health client or patient under Ohio or federal law." Campbell maintains that the rights created under R.C. 5122.29 are civil rights within the meaning of R.C. 2305.51(E) and that her claim is outside the purview of R.C. 2305.51.

{¶ 18} "Civil rights" as used in R.C. 2305.51 "includes, without limitation, the rights to contract, hold a professional, occupational, or motor vehicle driver's or commercial driver's license, marry or obtain a divorce, annulment, or dissolution of marriage, make a will, vote, and sue and be sued." R.C. 2305.51(A)(1)(a) (" 'Civil rights' has the same meaning as in section 5122.301 of the Revised Code").

{¶ 19} Campbell asserts that the phrase "without limitation" demands an expansive interpretation of "civil rights" that includes the right to protection. It is not necessary, however, to decide that question. Even if we were to conclude that the right of a mental-health patient to be given reasonable protection from assault and battery is a civil right within the meaning of R.C. 2305.51(E), Campbell is unable to establish the liability of the medical center. R.C. 5122.34(B) provides that "except as otherwise provided in section 2305.51 of the Revised Code, no person shall be liable for any harm that results to any other person as a result of * * * failing to otherwise attempt to protect such other person from harm by such client or patient." Thus, unless liability under R.C. 2305.51 is established, a mental-health institution may not be held liable for failure to protect a person from harm caused by one of its patients. The General Assembly has made R.C. 2305.51 the exclusive means by which a mental-health patient may establish liability for harm caused by another patient, notwithstanding the duty to protect patients imposed by R.C. 5122.29(B)(2).

{¶ 20} For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

LANZINGER, J., concurs separately.

RESNICK and PFEIFER, JJ., dissent.

---

**LANZINGER, J., concurring.**

{¶ 21} I agree that summary judgment was properly granted because there was no evidence of "an explicit threat of inflicting imminent and serious physical harm" to a "clearly identifiable" potential victim. R.C. 2305.51(B). This notice requirement is a crucial element in a suit against a mental-health institution for injury to a patient by another patient, as the institution faces liability for damages "only if" a threat was communicated to it beforehand.

{¶ 22} R.C. 2305.51(B) does not conflict with R.C. 5122.29(B)(2), the Patient's Bill of Rights, as Campbell calls it, for the mental-health institution is charged with providing *"reasonable* protection" to its patients. (Emphasis added.) An

institution that has notice of an explicit threat may be held liable in a civil action for damages for one patient's assault and battery of another patient if it has not furnished that reasonable protection. Certainly, if a threat is made against a patient and that threat is communicated to a hospital employee who fails to take steps to keep the threatened patient safe, the institution may be liable.

{¶ 23} The civil-rights exclusion found in R.C. 2305.51(E) does not override the need for notice of a threat to an identifiable patient. For even if "reasonable protection" against physical harm were determined to be a civil right, it is the fact of notice that calls reasonableness into account.

{¶ 24} Because I agree that the statutes on which appellant relies do not impose on mental-health institutions an absolute duty to protect patients from harm caused by third parties, I respectfully concur.

---

ALICE ROBIE RESNICK, J., dissenting.

{¶ 25} I would reverse the judgment of the court of appeals and remand this cause to the Court of Claims. I believe that appellant, Marlene Campbell, did not receive sufficient notice that the Court of Claims was considering granting summary judgment on all of her claims. Therefore, the decision to fully grant the motion of appellee, the Ohio State University Medical Center, for summary judgment was flawed. Moreover, at the time that summary judgment was granted, appellee had failed to meet its burden under Civ.R. 56(C) of proving that there was no genuine issue as to any material fact, and so was not entitled to judgment as a matter of law.

---

PFEIFER, J., dissenting.

{¶ 26} As I wrote in Garrett v. Sandusky (1994), 68 Ohio St.3d 139, 144, 624 N.E.2d 704 (Pfeifer, J., concurring), "the right to sue the state was conveyed to Ohioans in [Section 16, Article I of the Ohio Constitution]" and the General Assembly has "no role in determining the scope of this right." Therefore, pursuant to Section 16, Article I of the Ohio Constitution, "[t]here is no constitutional authority for sovereign immunity in Ohio." Fahnbulleh v. Strahan (1995), 73 Ohio St.3d 666, 670, 653 N.E.2d 1186 (Pfeifer, J., dissenting). R.C. 2305.51(B), as applied to this case, is just another form of unconstitutional sovereign immunity.

{¶ 27} Instead of endorsing the General Assembly's (unfortunately successful) attempt to absolve the state from a duty to protect patients of a mental-health institution in the absence of an explicit threat, this court should apply the general rules of tort law. We should reverse the judgment and remand the cause with instructions that the Court of Claims is to determine whether the state had a duty to protect Campbell, whether the state breached that duty, whether the breach was the proximate cause of the harm, and whether there were damages. See *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769; *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614. To do otherwise denies Campbell her constitutional right to a remedy. I dissent.

---

Squire & Pierre–Louis, L.L.C., and Lloyd Pierre–Louis, for appellant.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, and Karl. W. Schedler and Chelsea S. Rice, Assistant Attorneys General, for appellee.